## J. AND H. BULLOCK v. THE STATE.

1. NEW TRIAL — PRACTICE IN FELONY CASES.— As a general rule an application for a new trial must be made within two days after the conviction; but, for good cause shown, the court may, in a case of felony, allow the application to be made at any time before the adjournment of the term at which the conviction was had.

2. SAME — CASE STATED.— In a trial for arson it appeared that the written testimony previously taken at an examining trial was lost, and the trial court allowed parts of it to be supplied by parol proof. The evidence at bar was conflicting, and the consistency of the witnesses with their testimony at the examining trial became an important inquiry for the jury.    Defendants were convicted, and within two days they moved for a new trial, which was refused, and they gave notice of appeal.    Afterwards they were allowed to withdraw their notice of appeal, and to file a supplemental motion for a new trial, in which they alleged the discovery of the written testimony taken at the examining trial, and filed the same as part of the supplemental motion.    On some of the contested positions this written testimony seemed to sustain the defense, and might, if produced at the trial, have aided the jury in weighing the conflicting evidence.    *Held*, that the supplemental motion disclosed good cause for a new trial, and, under the peculiar circumstances of the case, it was error to overrule it, notwithstanding it was not filed until more than two days after the conviction and was insufficient as an application based on newly-discovered evidence.

APPEAL from the District Court of Milam., Tried below before the Hon. W. E. COLLARD.

The indictment seems to have been drawn under the "common-sense indictment" enactment of 1881, and reads as follows:

"*In the name and by the authority of the State of Texas:*

"The grand jury of Milam county present in the District Court of said county that, about the fifteenth day of July, A. D. 1880, in Milam county, Texas, Henry Bullock and James Bullock did wilfully burn a certain gin-house, the property of J. W. McCown; against the peace and dignity of the State."

The evidence showed that McCown's gin-house was

burned in the night of June 26, 1880, and that his oat-stack was fired in the night of July 14, 1880. On the 23d of the latter month, J. M. Smith, justice of the peace, held a "voluntary examining trial of James Bullock," and reduced to writing the testimony of those who appeared as witnesses.

In November, 1881, the present cause against James and Henry Bullock came to trial in the District Court. In eliciting the evidence it soon became a controverted question whether the "voluntary examining trial of James Bullock" was an investigation relating to the burning of the gin-house in June, 1880, or to the burning of the oat-stack in the succeeding July; and this involved the question whether the testimony of some of the most important witnesses was consistent with their statements at the "voluntary examining trial,"— which the prosecution sought to show was an inquiry into the gin-house fire, and not into the oat-stack burning, as was maintained by the defense. This contention would have been speedily settled if the justice's record of the "voluntary examining trial" could have been produced at the trial. The justice, however, was absent, and his record was not found until some days after the conclusion of the trial and the conviction of the defendants. Their supplemental motion for a new trial was accompanied by the justice's record as an exhibit, and the record made it plain that the "voluntary examining trial" related entirely to the oat-stack fire, as had been contended by the defense in the trial at bar.

The opinion of this court discloses the questions of practice which resulted from the peculiar circumstances of the case. A term of six years in the penitentiary was assessed by the jury against each of the appellants.

*R. J. Boykin*, for the appellants. This is a case resting on circumstantial evidence, and without positive proof of

the *corpus delicti.* It is true there is positive proof that the gin-house was consumed by fire, but no positive proof that it was burned by design or maliciously, or that it was burned by these defendants.

An examination of the statement of facts will show the following as the substantial testimony against the defendants: Against James Bullock, the testimony of N. Cass that on the Saturday evening preceding the burning, James Bullock said to him, "McCown had not acted right with him, and if I would look out I would see the heavens lighted up before morning," and that he met James Bullock that night about 10 o'clock in Little River Bottom, going in the direction of his father's, which was about two or two and a half miles from the gin-house; — Seely Gray's testimony that James Bullock came to his father's house about 9 or 10 o'clock that night, and called to his brother Henry, and that they rode off in the direction of McCown's gin-house; — Warren Worcester's testimony, "that, about a month before the burning, he (James Bullock) told me he intended to have revenge out of McCown, if he had to burn McCown's d—d shanty down;"— and Mrs. Seely Gray's testimony, about the same as her husband's.

Now, the written testimony discovered after the trial and presented to the court with the supplemental motion for a new trial conclusively shows that the witnesses Cass, Seely Gray and Mrs. Gray were testifying as to the evening and night of the firing of the oats and straw, which occurred on the 14th July, 1880, the gin-house being burned previously, on the 26th June, 1880. Therefore, the only testimony to be relied on for James Bullock's conviction is that of Worcester, who had had a difficulty with the brother Henry. Surely this is insufficient.

But it may be contended that the written statements discovered after the trial were in the nature of impeach-

ing testimony, and, therefore, could not avail for a new trial. Let us look to the facts of the case. On the trial, after laying the proper predicate of search, we introduced witnesses to prove the contents of these papers, and thus contradict the witnesses McCown, Cass, Mr. and Mrs. Gray. Afterwards we find the papers themselves, which we proposed as a substitution for the oral testimony of our contradicting witnesses, — papers containing the written statements, under oath, of these witnesses, and made a few days after the occurrence testified to. We simply substituted conclusive testimony, before unattainable by proper diligence, for the fallible testimony we were forced to use at the trial.

Indeed, it is not law that newly-discovered impeaching testimony can never avail for a new trial. The law is: if "the case is so gross as to make it probable the verdict was obtained by perjury, or that false testimony occasioned a surprise upon the party," there "will be sufficient cause to set aside a verdict and grant a new trial." 1 Graham & Waterman on New Trials, 221. It certainly would be unreasonable to hold that the defendants were not taken by surprise by the false testimony of State's witnesses who swore that the statements they had made before J. M. Smith related to the burning of the gin-house and not to the firing of the oats and straw, and that the statements made on the trial referred to the burning of the gin-house. Defendants, knowing the facts as they actually were, and one of them being present at the sworn statements before J. M. Smith, must certainly have been surprised by the false testimony on the trial. We say, therefore, that the newly-found testimony was material, could not be obtained at the trial by the use of proper diligence, was not cumulative, but a substitution of higher and conclusive testimony of the same witnesses, and would, in all likelihood, have changed the result; and that defendants were taken by surprise. In 1 Greenl. Ev.

322, it is laid down: "If, therefore, the facts thus testified to are directly proved to be false, there is no principle of law or of justice which prevents the party from availing himself of the truth of his case, although the credit of his own witness may thereby be impeached. New trials have been frequently granted, where there has been strong reason to suspect that perjury has been committed; much more ought they to be, where the perjury has been clearly demonstrated."

*H. Chilton*, Assistant Attorney General, for the State.

WINKLER, J.    This appeal is from a judgment of conviction for arson, with the punishment assessed at imprisonment of each defendant in the State penitentiary for six years.    The charging portion of the indictment is as follows: "That, about the fifteenth day of July, A. D. 1880, in Milam county, Texas, Henry Bullock and James Bullock did unlawfully burn a certain gin-house, the property of J. W. McCown; against," etc.

There were some four bills of exception reserved by the defendants' counsel as to the rulings of the court upon the trial below, and eight assignments of error are set out in the transcript of the record.    After a careful examination of the record of the whole case as made by the record, we conclude that the several errors complained of are either not well taken, or are not of sufficient importance to require a reversal of the judgment under the testimony, or that the errors complained of will be self-correcting on another trial, except as hereinafter specially noticed.

It appears by the record that, some time previous to the trial, there had been some sort of preliminary trial or inquiry before a justice of the peace of the county, involving the question of the guilt of one of these appellants as to some character of burning of the property of

the alleged owner of the gin-house, as charged in the indictment against these defendants; that the justice of the peace had reduced to writing the testimony of the witnesses examined before him, and had placed his record of the examination had before him in the safe of a neighbor for preservation; that at the time of the trial the owner of the safe in which the papers had been placed by the justice, was temporarily absent, but a clerk in the house had access to the safe; that search had been made for the record and papers deposited by the justice, and they could not be found.    Under these circumstances the prosecution was permitted to prove by parol the character of the inquiry as to the character of property charged to have been burned, and what the witnesses had sworn on the examination of the case had before the justice of the peace.

After the trial and conviction of the defendants, and after they had moved for a new trial, and after the motion for a new trial had been made and overruled, and the defendants had given notice of appeal, the defendants filed a supplemental motion for a new trial, which the court at first overruled, apparently on the ground that the trial had been concluded and that by the notice of appeal the court had lost its jurisdiction over the case. The defendants then withdrew their notice of appeal, and afterwards the supplemental motion for a new trial was overruled upon its merits, unqualifiedly.    It further appears by the record that it became an important question on the trial whether the examination had before the justice related to the burning of the gin-house mentioned in the indictment, or to some other burning, and that the witnesses were not agreed as to whether it was the one or the other.    It is further shown that it was attempted to be shown by the defendant that some of the State's witnesses are untruthful and unreliable witnesses, and on this question various witnesses testified both in favor of and against the credibility of the State's witnesses.

The motion for a new trial was filed on November 19, 1881. The supplemented motion was filed November 21, 1881. The district attorney demurred to the defendants' supplemented motion for a new trial, stating several grounds of exception, and among them that the defendants had previously moved for a new trial, which motion had been overruled and the defendants had given notice of appeal. 2. That the defendants had already had the benefit of the testimony set up in the supplemental motion, and the testimony would only be cumulative and in the nature of impeaching testimony, etc. The demurrer of the district attorney was filed on November 23, and on the same day the defendants, upon an intimation from the court that it had lost jurisdiction of this case because of their having given notice of appeal, asked permission of the court to withdraw their notice of appeal. This application was refused by the court. The judgment entry in this respect is as follows: "This day came on to be heard the motion of defendants for leave to withdraw the notice of appeal heretofore given by them and entered of record in this cause, in order that they may present a supplemental motion for a new trial; and said motion, being considered by the court, is overruled because the court has no power to grant such motion on the conditions asked, and because the defendants, having already appealed from the judgment rendered against them after their motion for a new trial had been heard and overruled, this court has no power to make further orders in this case; to which ruling of the court the defendants except."

The record further discloses that the defendants made a further application, filed November 27, for leave to withdraw their notice of appeal; whereupon it seems the following entry was made by the court, of that date: "The defendants having, by an instrument in writing signed by themselves and their counsel and filed in this cause, expressly and unconditionally withdrawn the

notice of appeal heretofore given and entered of record by defendants in this cause, which was allowed, and ordered by the court, thereupon came on to be heard defendants' supplemental motion for a new trial herein, and the same having been heard and considered by the court, it is ordered that said supplemental motion for a new trial be and the same is hereby overruled; to which ruling of the court the defendants in open court except and give notice of appeal to the Court of Appeals."

The supplemental motion for a new trial is as follows: "Now come the defendants in said cause and file the following as a supplemental ground for a new trial in said cause, to wit: that since the filing of the original motion for a new trial in said cause, the written testimony of N. Cass and others, taken before J. M. Smith, justice of the peace of Precinct No. 1, Milam county, Texas, in July, 1880, concerning the defendant James Bullock, has been discovered; that, at the time of the trial of said cause, defendants proved that due diligence and search had been made for said testimony, and that thereupon secondary oral evidence of said testimony was admitted to prove said testimony; that again, and before the expiration of two days from the rendition of the verdict in said cause, defendants have caused an additional search to be made for said testimony, and that this last search has resulted in the finding of said written testimony. That said written testimony confirmed and in every respect agrees with the testimony of defendants' witnesses and the testimony of the defense, and refutes the theory and most important, substantial and material positions of the prosecution; that with the written testimony defendants believe and aver that in their opinion the jury could not and would not have found a verdict against defendants; that said written testimony is hereto attached, marked A, and asked to be made a part of this paper; that defendants respectfully ask the court to withdraw and set aside

for the present the order overruling the motion for a new
trial in said cause and the sentencing of defendants,
and hear this ground for granting a new trial and grant
them (defendants) a new trial in said cause, and the affi-
davit of J. M. Smith, the justice of the peace aforesaid,
on the identity of said written testimony and his official
signature to the same hereto attached and asked to be
made a part of this paper." This motion is sworn to and
is accompanied by the written evidence of the witnesses
alluded to therein, which is fully identified by the justice
of the peace as the testimony taken before him.

It can hardly be said that this application came fully
up to the requirements of law which ordinarily obtain in
granting new trials on account of newly discovered
evidence, as laid down in repeated decisions of this court.
And whilst we are not inclined to enlarge the rules laid
down in such cases, newly discovered evidence being
often the last resort of a convicted criminal, still, under
the peculiar circumstances of this case as disclosed by the
record before us, we are of opinion that a due administra-
tion of the law, and a proper regard to the substantial
rights of the defendants, and especially because of the
different and contradictory statements of the witnesses
and the several material departures from the written
testimony, we are of opinion the defendants are en-
titled to the benefit of the testimony taken before the
justice of the peace, in order to show the disagreements
and variances from what they had formerly testified to
as *true*, and to aid the memory of the witnesses as to
what the facts were, and to enable the jury to properly
weigh the testimony of the different witnesses.

We conclude, therefore, that under the circumstances
the court erred in overruling the motion for a new trial
based upon the supplemental motion and exhibits ap-
pended thereto; and for this error the judgment will be
reversed and the cause remanded, in order that the

defendants may have the benefit of the testimony set out in their supplemental motion on another trial.

As a general rule a new trial must be applied for within two days after the conviction; but in cases of felony the court may for good cause shown allow the application to be made at any time before the adjournment of the court for the term.    Code Crim. Proc. art. 779.

*Reversed and remanded.*